**ESTRIDGE, Admx., Appellee, v. THE CINCINNATI STREET RAILWAY COMPANY, Appellant.**

Ohio Appeals, First District, Hamilton County.

No. 6511.  Decided May 14, 1945.

James A. Culbertson, Cincinnati, for appellee.
John M. McCaslin, Cincinnati, for appellant.

## OPINION

By MATTHEWS, J.

In this case the plaintiff as administratrix recovered a judgment for $4500.00 against the defendant for wrongfully causing the death of a boy who was eighteen months old. The jury returned a verdict of $6,000.00, from which the Court granted a remittitur of $1500.00, which the plaintiff accepted.

(1) The first error urged upon us is that the amount of the verdict was so excessive as to show that it resulted from passion and prejudice, which could not be cured by any remittitur. It is said that there is no possible basis upon which a jury could determine the pecuniary value of a child of that age to its parent, and that any attempt would necessarily resolve itself into mere speculation.

In **Ochsner v Traction Co., 107 Oh St 33,** the Court considered the elements upon which the jury could base an estimate of the money value of a child 5½ years old to its parents. At page 41, the Court said:

"The record shows that the decedent was a healthy child, large for her age, bright mentally, obedient to her parents, a good child, that she would have gone to school the following year, that she was the daughter of a laboring man, that she had a younger brother and sister, to whom as well as to her parents she had a pecuniary value; * * * "

And, at page 42, the Court quoted with approval from Corpus Juris as follows:

" '* * * The mental, moral, and physical characteristics of the child must be considered, as well as his expectation of life, in determining the extent of the pecuniary aid which he would probably give to his parents, and the jury are authorized to take into consideration the probable future increase of earning capacity of the child.' "

We find in this record the elements that were deemed sufficient in Ochsner v Traction Co., for a determination of the pecuniary value of a child as is shown by the evidence in this case, and we cannot say that the amount found by

the jury discloses that it was the result of passion or prejudice.

Appellant complains of the conduct of appellee's counsel in asking the child's father: "When did you next see your baby after the accident?" to which the answer was "I never got to see him." It is said that this tended to arouse the passions or prejudices of the jury. There was no objection at the time and the subject was not pursued. It was immediately followed by a description of the child while living which, of course, was competent and there is nothing else in the record that would indicate the slightest attempt to appeal to passion or prejudice. We cannot think that this question and answer had any such tendency.

(2) Upon the subject of the preponderance of the evidence, the Court charged the jury that:

"By preponderance of evidence is meant the greater weight of the evidence in worth and value. If you find that the evidence supporting the plaintiff's claim is greater in worth and value than that offered by the defendant, then the preponderance is with the plaintiff, and she must sustain the burden of proving her case, and your verdict should be for the plaintiff. If on the other hand, the evidence of the plaintiff and the defendant is equally balanced in worth and value, or if the defendant's evidence outweighs that of the plaintiff in worth and value, then the plaintiff has failed to prove her case by a preponderance of evidence, and your verdict in that event should be for the defendant."

It is pointed out that this charge deprived the defendant of the benefit of any evidence favorable to it offered by the plaintiff, and, for that reason, is erroneous. **Cincinnati Traction Co. v Williams, 115 Oh St 124; Van Demark v Thompkins, 121 Oh St 129;** and **Cincinnati Traction Co. v Eyrich, 25 Oh Ap 546.** There is no doubt that this charge did not conform to the rule and is erroneous. There still remains the question of whether the error was prejudicial. No judgment should be reversed for mere error. It must be prejudicial error of a substantial nature to justify a reversal.

Whether this error was prejudicial depends upon the existence of evidence offered by the plaintiff that reasonably could be considered as favoring the defendant upon some issue. It is strongly urged that there was no such evidence.

We find ourselves unable to agree with appellee's counsel on this point.

The plaintiff placed the decedent's father upon the stand. He testified that he was operating the automobile in which

the decedent was riding, that the collision with defendant's bus took place in a street intersection, that he did not see the defendant's bus until it was almost in contact with his automobile, when his attention was called to it by his wife, who was sitting beside him, although he had looked in both directions. It was about 7:20 o'clock in the evening on February 20th. It was raining slightly at the time. He was approaching from the right in a lawful manner and, it is conceded, had the right of way. Whether his failure to see the bus sooner was any evidence of negligence on his part depends upon his duty at the time and place. As the father is a beneficiary of any recovery, his contributory negligence was a potential issue and if this evidence showed any breach of duty which he owed to the defendant, the charge which would have deprived the defendant of its benefit would be prejudicial. It is claimed that there was no duty to look to the left, and, therefore, failure to see could not be evidence of negligence.

Now what is the duty of the operator of an automobile who had the right of way at a street intersection? Is his failure to look to the left or to see a vehicle approaching from that direction a breach of duty owing to the driver of such vehicle?

In **Morris v Bloomgren, 127 Oh St at 158 and 159,** the Supreme Court said on this subject:

"We have already stated that the driver of a lawfully driven vehicle approaching from the right had the right to assume that the operator of the vehicle approaching from the left would obey the law and yield him the right of way. However, if such operator disobeyed the law, and failed or refused to yield the right of way to the vehicle that possessed it, a situation might arise whereby an obligation of care would arise upon the part of the driver having the right of way. If he should discover just as he was approaching or entering the intersection, that the driver of the vehicle on his left was violating the law, and was not yielding to him the right of way, it then became the duty of the driver lawfully having the right of way not to wantonly injure the other, but to use ordinary care to avoid injuring him, after discovering and appreciating the dangerous peril in which the negligent driver had placed himself."

We do not construe this language to exempt the person having the right of way from the duty to look to the left

as well as the right if due care required it. Neumann v Apter, (95 Conn. 695, 112 Atl. 350) 21 A. L. R. 970, at 988; Webber v Park Auto Transportation Co., (138 Wash. 325, 244 Pac. 718) 47 A. L. R. 590, at 614; and 5 Am. Jur., 667. Ordinary care is the minimum requirement in most, if not all, situations.

The defendant introduced evidence that the automobile in which decedent was riding approached the intersection at not less than forty miles per hour. If this evidence was believed, the right of way, given to one lawfully approaching from the right, was forfeited, and the approaching vehicles placed upon an equality before the law, without any preferential right of way to either. The common law duty to exercise reasonable care rested upon both.

The defendant also introduced evidence that its bus approached and entered the intersection at a rate of speed of from ten to fifteen miles per hour. Under such circumstances, the fact that the operator of the automobile did not see the bus until the instant of contact became material in determining whether he had exercised reasonable care. This was "offered" by the plaintiff and the charge of the Court deprived the defendant of whatever value it had. Under the authorities, this was prejudicial error.

(3) After the Court had instructed the jury generally, counsel for defendant requested that the jury be instructed that "they have no right to be bound by a quotient verdict" which the Court refused. This is assigned as error.

The Court had instructed the jury that the concurrence of at least nine was necessary to return a verdict and that they should insert in the proper blank space in the form furnished them "the number of the members of the jury who agree with that verdict," and had given a special charge that the pecuniary loss must be determined by the jury from the evidence, and not as a matter of guess work. And, of course, the jury had been sworn to well and truly try and a true verdict to render.

Nothing had occurred at the trial that suggested that the jury contemplated using any particular process of composing their first impressions as to the pecuniary loss. The quotient method had not been mentioned and nothing had occurred to indicate that an improper use would be made of that process.

The request did not distinguish between the improper use of the quotient method by agreeing in advance to be bound and a proper method involved in its use in reaching an agreement on the amount. It is the prior agreement to be bound regardless of their actual conviction based on the evidence,

that is condemned just as any other disregard of their oath is condemned. **30 Oh Jur 1104.** If after the amount has been ascertained, the respective jurors deliberately accept it as in their opinion a just verdict, it is not legally objectionable. *Benjamin v Helena Light & Ry. Co.* (—Mont.—, 255 Pac. 20) 52 A. L. R., 32 at 44.

The instruction requested related to the duty of the jurors rather than to an issue in the specific case. It would have been cautionary in nature. On this subject it is said in 14 R. C. L. 749, that:

"But the court cannot be expected to give express and special warning against every possible mistake or misapprehension into which the jury may fall in the discharge of its functions, and when and to what extent instructions of this nature shall be given rests very largely in the sound and impartial discretion of the court. Therefore where there is nothing to show that the jury will be affected by prejudice or sympathy, or will not perform their duties fairly and impartially, it is not error for the court to refuse to give a cautionary instruction."

We hold that it rested in the sound discretion of the court to give or refuse an instruction upon the jury's duty as to a "quotient verdict," and that there is no abuse of discretion shown in this case.

(4) Because the decedent's father was the operator of the automobile that came in collision with defendant's bus and would participate in any recovery, the issue of his contributory negligence was in the case. For that reason, the trial court deemed it proper to insert in the customary form of verdict for the plaintiff this statement, just above the place for the jurors' signatures:—"We hereby find that . . . . . was guilty of contributory negligence which proximately concurred in causing the collision involved in this action."

In the verdict returned in favor of the plaintiff the blank space was not filled in. It is argued that the verdict is a finding that an unnamed person was guilty of contributory negligence, and that that invalidates the verdict.

Upon the subject of its verdict, the Court charged the jury that:

"I instructed you that if you find in favor of the plaintiff, and also find that the operator of the automobile in which the decedent was a passenger was guilty of contributory negligence you shall insert in the last paragraph, in the space

provided, the name of the operator who you find was guilty of contributory negligence. Now if you find in favor of the plaintiff, and do not find that the operator was guilty of contributory negligence, then of course you will leave that last paragraph blank and not insert any name."

We had before us a similar question in **Dow Drug Co. v Nieman, 57 Oh Ap 190,** and, after considering the decided cases on the subject, we drew this conclusion, at 195:

"The legal effect of the action of a jury depends not alone upon the exact language of the verdict. The circumstances under which the verdict was returned, and particularly the charge of the court, must be taken unto consideration."

The authorities are collected in that opinion.

Our conclusion is, that the verdict, read in the light of the charge, is a clear finding that there was no contributory negligence by any one.

We find no other prejudicial error in the record.

For error in the charge, excluding the defendant from evidence favorable to it "offered" by the plaintiff, the judgment is reversed and the cause remanded for further proceedings according to law.

HILDEBRANT, P. J., MATTHEWS & ROSS, JJ., concur in syllabi, opinion & judgment.